**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**ROBERTA L. SMITH**                                                              **PLAINTIFF**

**VERSUS**                                                              **2:05cv2179KS-MTP**

**WESLEY HEALTH SYSTEMS, LLC; And
TRIAD HOSPITALS, INC.**                                                              **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

      This matter is before the court on Motion for Summary Judgment **[#29]** filed on

behalf of the defendant Wesley Health Systems[1].  The court, having reviewed the

motion, the response, the briefs of counsel, the pleadings and exhibits on file and being

otherwise fully advised in the premises finds that the motion is well taken and should be

granted.  The court specifically finds as follows:


**FACTS**

      Plaintiff Roberta Smith began her employment with Defendant Wesley on or

about April 21, 2003, working in the Wash Room.  During the majority of her

employment, there apparently were no problems with the plaintiff's performance or

productivity.  In fact, the last evaluation the plaintiff received on April 21, 2004, was a

good one.  The plaintiff contends that it was not until the defendant hired Kelly Baker as

the plaintiff's supervisor that her alleged performance problems began.  Around that

---

[1]  Defendant Triad Hospitals, Inc., has been dismissed by a Stipulation of Dismissal entered by
the parties on March 2, 2007, and is no longer a party.

time, the plaintiff's department, the Wash Room, and the Sterilization Department were in the process of merging.  Individuals in both departments were to continue performing their former duties and to assume the additional duties of the other department.

Just prior to the merger, Baker allegedly isolated the plaintiff and instructed her to fold and wrap "OR" cloths exclusively.  The plaintiff contends that Baker instigated this action because that is what the "old people" at Baker's former employer, Forrest General Hospital, were made to do.  The plaintiff bases this contention on a conversation that Melody Collins, the plaintiff's co-worker and a former employee of Forrest General Hospital with Baker, in which she told the plaintiff that Forrest General "put all of their old people folding and wrapping "OR" cloths."  The defendant contends that this conversation, taken in context, related to the lack of cross-training for this department at Forrest General and the fact that such cross-training on the various duties of the about to be merged departments at defendant was good.

Nevertheless, the plaintiff asserts that she was made to stay in a room by herself for approximately one month exclusively wrapping and folding "OR" cloths.  The plaintiff contends that this was not a desirable job duty, and the impetus for such assignment of duties was the plaintiff's age.

The merger of the departments apparently occurred around or during the month that the plaintiff was assigned to fold "OR" cloths.  Upon consummation of the merger, the plaintiff asserts that she was expected to perform all of her old duties and additional sterilization duties such as using the autoclave to sterilize instruments even though she was one month behind her co-employees because of the exclusive assignment of folding "OR" cloths.

2

The plaintiff also contends that she was required to perform duties that younger employees did not want to perform, such as cleaning pumps, cleaning scopes, working in the Decontamination Room, and wrapping "OR" cloths because these duties were openly refused by younger employees, such as Sue Moss and Melody Collins, in the presence of Plaintiff.   The plaintiff contends that she was present when Melody Collins told Supervisor Baker that Moss refused to perform the duties and that they were reassigned to the plaintiff.   The plaintiff has alleged that after the merger, Baker continued to single her out and made her work by herself in the Decontamination Room every day for two weeks without help and that Baker manipulated the plaintiff's schedule for the benefit of Melody Collins by rotating her shifts.

Shortly after Collins' allegedly age related comments, the plaintiff reported the comments and alleged age discrimination to the Director of Surgery, Sharon Vincent. Vincent told the plaintiff to report the conduct and comments to Human Resources Manager John Degi.  The plaintiff reported the comments in her department, including the remark about the "old people at Forrest General," about being sent to wrap and fold "OR" cloths in isolation, her tasks in the Decontamination Room, and being required to clean pumps while others were not, to Degi.

Human Resources Manager Degi allegedly laughed and said he wondered what Wesley would do with him because of his age, since he was "old", too.   According to the plaintiff, he said that she should not have to put up with such comments/conduct and said he would take care of it.  The plaintiff also attempted to talk to the CEO of the hospital, but stated that she was "rushed out" of her opportunity by Lori King, Director Vincent's Secretary.

3

In or around August, 2004, the plaintiff and others in her department were told that they needed to increase productivity and were given a goal of preparing five instrument trays a day.  On September 29, 2004, after having difficulty meeting the goal, the plaintiff received a warning document from Sharon Vincent.  The document contains the following information:

> Bobbie has been given 30 days to increase productivity. She was not doing but one tray of instruments some days. She was given a goal of 5 trays/day minimum. She has kept up the productivity reports as asked.
>
> […]
>
> Bobbie has been doing better – she is looking up instruments in the book when unfamiliar; and her shift has been changed to make better relations with the rest of the staff she works with.
>
> […]
>
> Bobby has shown improvement with her productivity – will only have repeat conference if necessary.

The document was signed by Director Vincent and Plaintiff on September 29, 2004.  The plaintiff included the following comments on the document: "I do very well with my work and I really like working with instruments and want to learn further."  The plaintiff did not receive a repeat conference.

On January 19, 2005, the plaintiff was fired.  On that date, Deborah Mays, who had assumed duties from Surgery Director Sharon Vincent, came into Plaintiff's work room and allegedly "fussed at her" claiming that there was something missing from an instrument set and that the doctors were very upset. Mays told the plaintiff to follow her to John Degi's office where Degi told the plaintiff that Wesley was upset with her because of things that she either could not, would not or did not do, and at that time he

as going to lay her off.  He told the plaintiff she was not eligible for transfer or rehire. No one was hired to replace the plaintiff.

The plaintiff asserts that other employees in her department averaged less than the five tray per day minimum quota and in fact only had an average of four trays per day.   The plaintiff's alleged performance issues were brought to the attention of upper management, including Mays, by Kelly Baker, the plaintiff's supervisor, and Sharon Vincent, the Operating Room Director.

The plaintiff contends that at or near her termination, performance issues were also brought up around the same time period concerning another employee, Darryl Thompson, who worked in the plaintiff's same department and on the same shift and is younger than the plaintiff  However, unlike the plaintiff, Thompson had no action taken against him.    In fact the plaintiff was the oldest employee in her department and her supervisor, Kelly Baker was the youngest.

On February 15, 2005, the plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") based on age discrimination in her employment.  She amended the charge to include retaliation on May 11, 2005.  The EEOC issued its Right to Sue letter on November 19, 2005, after concluding that it could not find evidence of a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*, (the "ADEA").

On December 12, 2005, the plaintiff filed the instant complaint alleging that she was discriminated against on the basis of age and in retaliation for making an internal complaint of age discrimination in violation of the ADEA.  The plaintiff also alleges a state law claim of intentional infliction of emotional distress.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."   *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d

6

265, 272 (5ᵗʰ Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5ᵗʰ Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5ᵗʰ Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

7

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

### THE PLAINTIFF'S TITLE VII CLAIMS

In order to prevail, the plaintiff must ultimately prove <u>intentional</u> discrimination. *Jones v. Flagship International*, 793 F.2d 714, 719 (5th Cir. 1986).  Thus, the factual inquiry is whether "'the employer [is] treating some people less favorably than others because of their [age].'"  *Id.,* (*quoting United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983)(other citations omitted)).

The burden rests with the plaintiff to prove her case by a preponderance of the

evidence, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093, 94, 67 L.Ed.2d. 207, 215 (1981); she may do so by offering either direct evidence of discriminatory animus or by offering circumstantial evidence sufficient to support an inference of discrimination. *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir. 1980).  *See also, Lee v. Russell County Bd. of Education*, 684 F.2d 769, 773-74 (11th Cir. 1982).  In this case, the plaintiff has attempted to offer what she contends is direct evidence of discriminatory animus related to the offending conversation of Melody Collins regarding "old people" but is largely proceeding with her case circumstantially.

*McDonnell Douglas Corp. v. Green,*  411 U.S. 792, 93 S. Ct. 1917, 36 L.Ed.2d. 668 (1973), recognized the difficulty of proof for Title VII claimants who rely on circumstantial evidence to prove discrimination.  The court responded by establishing an order of presentation of proof and an allocation of the burden of production for Title VII claimants.  The burden rests with the plaintiff to establish a *prima facie* case of discrimination.  Once the plaintiff meets that burden, the defendant must then articulate some legitimate, nondiscriminatory explanation for the adverse employment action.  Finally, the plaintiff must have an opportunity to prove by a preponderance of the evidence, that the explanation offered by the defendant is a pretext for discrimination. *Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d. 207 (1981).

However, in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court held that a plaintiff is not entitled to prevail merely by proof that a defendant's stated reason for the employment actions is

9

pretextual.  The Fifth Circuit, interpreting *St. Mary's Honor Center,* held:  "To prevail ultimately, the plaintiff must prove, through a preponderance of the evidence, that the employer's reasons were not the true reason for the employment decision <u>and</u> that unlawful discrimination was."  *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir. 1993).

The United States Supreme Court gave additional guidance on the burden shifting analysis enunciated in *McDonnell Douglas v. Green* in *Reeves v. Sanderson Plumbing Products, Inc.*,  530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).[2]  The court held that meeting the requirement of showing a *prima facie* case of age discrimination coupled with sufficient proof to allow a jury to determine that the employer's stated nondiscriminatory reason is false is sufficient to support a verdict.

Previously, this Circuit had analyzed Supreme Court precedent to require something beyond a *prima facie* case and rebuttal of the employer's nondiscriminatory reason.  In *Reeves*, the Fifth Circuit had reversed a jury finding of liability when a plaintiff had in fact proved a *prima facie* case of age discrimination and had offered substantial proof to show that the employer's nondiscriminatory reason for the discharge was false.  197 F.3d 688 (5th Cir. 1999).

In resolving a conflict among the Circuits, the Supreme Court reversed the Fifth Circuit and stated "Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of

---

[2]  While the *Reeves* case dealt with a judgment as a matter of law the Court acknowledged that the same standard for judging a motion under Rule 50 is applied under Rule 56 as "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves,*  530 U.S. at 150 (*quoting Anderson v. Liberty Lobby Inc.*, 477, U.S. at 250-251; *see also, Celotex Corp. v. Catrett*, 477 U.S. at 323).

fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. However, the unanimous *Reeves* Court went on to hold "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

The Fifth Circuit held in *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993):

> To make out an ADEA claim, the plaintiff must establish the existence of discrete facts that show some nexus between the employment actions taken by the employer and the employee's age.

"The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowskv. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988) (citations omitted).

If the plaintiff has demonstrated a genuine issue of material fact from which any reasonable jury can conclude that she was discriminated against because of her age, then defendant's motion for summary judgment should fail.  If, however, the plaintiff has not produced any evidence before the court which would justify a reasonable jury in finding intentional discrimination on the basis of her age, the defendant should not be put to trial.

11

**RETALIATION CLAIM**

In order to present a successful retaliation claim the plaintiff must establish her *prima facie* case by offering proof that (1) she was engaged in protected activity under Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.  *See, McMillan v. Rust College Inc.*, 710 F.2d 1112 (5th Cir. 1983) and *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996).

The plaintiff was engaged in protected activity when she complained of discrimination on the basis of her age and she ultimately suffered an adverse employment action as will be discussed, infra.  However, the plaintiff admitted in her deposition that she did not think Degi's decision to terminate her had anything to do with her reporting her complaints of age discrimination.  This admission forecloses any claim for retaliation as she is unable to establish the required causal link between her reporting the offending conduct and the decision to fire her.

**AGE DISCRIMINATION CLAIM**

In order to present a *prima facie* case of age discrimination, the plaintiff must offer proof that she: 1) was members of a protected class; 2) was qualified for the positions she held; 3) was subject to an adverse employment action; and 4) was replaced by someone outside the protected class or that others similarly situated were treated more favorably.  *See Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005); and *Okoye v. University of Texas  Houston Health Science Center*,

245 F.3d 507 (5th Cir. 2001).

The defendant does not dispute that the plaintiff was a member of a protected class or even that she was qualified for her position but instead asserts that the plaintiff cannot establish a *prima facie* case of age discrimination because she did not suffer an adverse employment action.  This argument is supported by the defendant's correct summation that the plaintiff's complaints of undesirable work assignments, false accusations against her and shift changes are not adverse employment actions.  However, this argument totally ignores the fact that the plaintiff was terminated and this, indeed, is an adverse employment action.  For the defendant to argue otherwise is disingenuous.

Thus, the court passes to the defendant's second argument that the plaintiff cannot establish a *prima facie* case because she was not replaced by someone outside her protected class nor was anyone similarly situated treated more favorably than the plaintiff.  The plaintiff recognizes that no one replaced her so she argues that several co-employees, younger than her, were indeed treated more favorably than her.  She points to the allegation that Melody Collins was allowed to change her shift, which adversely affected the plaintiff and that other younger employees did not have as high a tray per day quota as her.  She also points to the fact that she was isolated and made to perform demeaning tasks that other co-workers refused to perform.

The defendant defends against this argument with the assertion that the plaintiff's co-employees were not similarly situated.  To be similarly situated, the co-employees' duties had to be nearly identical.  The defendant provides no evidence that the plaintiff's co-employees' duties were not "nearly identical" to those of the plaintiff.

13

All of the evidence before the court suggests that, except to the extent the plaintiff contends that she was given excessive undesirable duty, all of the employees in the plaintiff's department shared nearly identical job responsibilities.  The plaintiff has, at least, created a question of fact as to whether her co-employees were treated more favorably than she.

Thus, assuming *arguendo*, that the plaintiff has presented a *prima facie* case of discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its termination of the plaintiff.  In this vein, the defendant argues that the plaintiff was fired because of excessive mistakes and low productivity.

The plaintiff responds that others in her department were also low in productivity and made excessive mistakes and they were not fired.  However, the plaintiff has provided no evidence to support her conclusory contentions.   "Conclusory statements are not sufficient to prevent granting of a motion for summary judgment." *Williams v. University Medical Center*, 846 F. Supp. 508, 512 (S.D. Miss. 1994)(*aff'd* 46 F.3d 66 (5th Cir. 1995)).

The plaintiff also disputes the defendant's negative performance assessments of her and argues that they are merely a pretext for discrimination.  However, the evidence before the court paints a quite different picture.  The documents relied upon by Mays and Degi in deciding to terminate the plaintiff show a consistent and continuing pattern of excessive mistakes and low productivity.  These documents include numerous emails and detailed notes from Kelly Baker, the plaintiff's supervisor, setting forth the errors and productivity failures of the plaintiff.  They also reveal the disciplinary and rehabilitative actions taken in regard to the plaintiff's poor performance and the

14

plaintiff's unsuccessful efforts to improve.  Regardless, disputes over performance

evaluations are insufficient to support an inference of discrimination.  *Shackelford v.*

*Deloitte & Touche, LLP*, 190 F.3d 398, 405 (5th Cir. 1999).

> The Fifth Circuit has held that

> [T]he ADEA was not created to redress wrongful discharge simply
> because the terminated worker was over the age of forty.  A discharge
> may well be unfair or even unlawful yet not be evidence of age bias under
> the ADEA.  To make out an ADEA claim, the plaintiff must establish the
> existence of discrete facts that show some nexus between the
> employment actions taken by the employer and the employee's age.

*Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993).  The plaintiff's allegations of

pretext are based on conclusory statements and fail to present an adequate basis of

direct or circumstantial evidence that could support, as a matter of law, a jury verdict of

discrimination on the basis of age.  The defendant's decision to fire the plaintiff may

have been good, bad or indifferent - but the decision does not appear to have been

motivated by intentional discrimination on the basis of the plaintiff's age.  Thus, the

defendant is entitled to summary judgment on the plaintiff's age discrimination claims

## STATE LAW CLAIM

### Intentional Infliction of Emotional Distress

The plaintiff alleges that Wesley's willful, wanton and reckless disregard for the

plaintiff's rights and interests, inflicted emotional distress on her.  In order to state a

cause of action under Mississippi law for the tort of intentional infliction of emotional

distress, the defendant's conduct must have been "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

as atrocious, and utterly intolerable in a civilized community."  *Raiola v. Chevron USA, Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004), *reh'g denied*, 2004 Miss. App. LEXIS 513 (Miss. Ct. App. 2004) (citation omitted); *see also Eaves v. K-Mart Corp.*, 193 F.Supp. 2d 887, 894 (S.D. Miss. 2001) ("To be actionable, a defendant's conduct should evoke outrage or revulsion.").  Thus, a cause of action does not lie for "mere insults, indignities, threats, annoyances, petty oppression or other trivialities."  *Raiola*, 872 So. 2d at 85.

In light of this high standard, therefore, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes."  *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001) (citations omitted); *see also Raiola*, 913 F.Supp. at 982 (same).  In general, causes of action for intentional infliction of emotional distress within the context of a workplace environment are "limited to cases involving a pattern of deliberate, repeated harassment over a period of time."  *Lee*, 797 So. 2d at 851 (citations omitted); *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 976, 982-83 (N.D. Miss. 1996) (same) (citations omitted).

Indeed, the Fifth Circuit has noted that "[o]nly in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress."  *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654-55 (5th Cir. 1994), *reh'g denied en banc*, 1994 U.S. App. LEXIS 10164 (5th Cir. 1994). *Accord Brown v. Inter-City Fed'l Bank for Savings*, 738 So. 2d 262, 265 (Miss. Ct. App. 1999) ("More is required to support an intentional infliction of emotional distress recovery than

16

the usual age discrimination claim.").

   The court finds that the evidence in the record falls well short of what is required for the plaintiff to have a viable claim for intentional infliction of emotional distress and therefore summary judgment for the defendant on this claim is granted.

   IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion for summary Judgment **[#29]** is Granted and the plaintiff's complaint is dismissed with prejudice and that any other pending motions are dismissed as moot.

   A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

   SO ORDERED AND ADJUDGED this the 14th day of May, 2007.


                              *s/ Keith Starrett*
                         UNITED STATES DISTRICT JUDGE